UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| S.M.,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 19-cv-02509-LB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING COMMISSIONER'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 19 & 22 |

**INTRODUCTION**

The plaintiff S.M. seeks judicial review of a final decision by the Commissioner of the Social Security Administration denying her claim for supplemental-security income ("SSI") benefits under Title XVI of the Social Security Act ("SSA").[1] The plaintiff moved for summary judgment.[2] The Commissioner opposed the motion and filed a cross-motion for summary judgment.[3] Under Civil Local Rule 16-5, the matter is submitted for decision by this court without oral argument.

---

[1] Compl. – ECF No. 1 at 2; Mot. – ECF No. 19 at 3. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Mot. – ECF No. 19.

[3] Cross-Mot. – ECF No. 22.

United States District Court
Northern District of California

The court grants the plaintiff's motion, denies the Commissioner's motion, and remands for further proceedings.

## STATEMENT

### 1. Procedural History

On February 20, 2015, the plaintiff applied for SSI benefits under Title XVI of the SSA.[4] She alleged disability beginning on January 1, 2015 from the following impairments: anger issues; migraines; insomnia; and bipolar disorder.[5] Her claim was denied initially and on reconsideration.[6]

The plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and one was held on October 4, 2017, where a vocational expert ("VE") testified.[7] On March 14, 2018, the ALJ held a second hearing because the plaintiff did not appear at the first hearing.[8] The ALJ issued an unfavorable decision on April 4, 2018.[9] The Appeals Council denied the plaintiff's request for review on March 14, 2019.[10]

The plaintiff timely filed this action on May 9, 2019 and subsequently moved for summary judgment.[11] The Commissioner opposed the motion and filed a cross-motion for summary judgment.[12] All parties consented to magistrate-judge jurisdiction.[13]

---

[4] AR 48. Administrative Record ("AR") citations refer to page numbers in the bottom right-hand corner of the AR.

[5] AR 48–49.

[6] AR 57, 72.

[7] AR 19.

[8] *Id.*

[9] AR 30.

[10] AR 3.

[11] Compl. – ECF No. 1; Mot. – ECF No. 19.

[12] Cross-Mot. – ECF No. 22.

[13] Consents – ECF Nos. 11, 14.

United States District Court
Northern District of California

United States District Court
Northern District of California

## 2.   Summary of Administrative Record

### 2.1   Medical Records

The plaintiff alleged that she was disabled because of her anger issues, bipolar disorder, migraines, and insomnia.[14] The plaintiff submitted the following records in support of her claim: (1) records from Santa Rita Jail from April 25, 2013 to July 23, 2013;[15] (2) records from Sausal Creek Outpatient Clinic, where she was treated for bipolar disorder, anxiety, and amphetamine and marijuana dependence;[16] (3) records from the Schuman-Liles Clinic, where she was treated for mood disorder and post-traumatic stress disorder ("PTSD");[17] (4) a mental status exam by Paul Martin, Ph.D.;[18] and (5) records from John George Psychiatric Hospital.[19]

Because the plaintiff's appeal involves her challenge of the ALJ's assessment of the opinion of examining psychologist Dr. Martin and the plaintiff's function reports, this order fully recounts these parts of the record. Because the parties also reference the plaintiff's treatments from Michael Hipolito, M.D., this order also summarizes these records.

### 2.1.1   Michael Hipolito, M.D. — Treating Psychiatrist

Michael Hipolito, M.D., treated the plaintiff four times from September 2, 2015 to August 3, 2016.[20] On her initial visit, her chief complaint was anxiety.[21]

Dr. Hipolito conducted a mental-health status exam on each visit.[22] Over an eleven-month period, Dr. Hipolito observed that the plaintiff had normal impulse control, normal thought

---

[14] AR 48.

[15] AR 327–48.

[16] AR 349–59.

[17] AR 360–64, 384–99, 465–79.

[18] AR 365–71.

[19] AR 377–83.

[20] AR 386, 391, 465, 469.

[21] AR 392.

[22] AR 387–88, 393, 467, 471.

process and content, normal speech, fair insight and judgment, good eye contact, good grooming, and no suicidal or homicidal ideations.[23]

The plaintiff experienced some improvements while she was on medication. For example, on September 2, 2015, the plaintiff told Dr. Hipolito that she "felt more relaxed" and that the medications were helpful with no side effects.[24] She still complained of anxiety.[25]

On February 11, 2016 the plaintiff's condition worsened. She had been "off meds for one month" and was "on edge."[26] Her sleep was "fair," her nightmares had returned, she endorsed a depressed mood, and her anxiety was "high."[27] She did not report any auditory hallucinations, which she previously had experienced.[28] On August 3, 2016, the plaintiff had been off her medications for two-and-a-half months and was feeling "somewhat depressed."[29] Dr. Hipolito described her mood as "dysthymic" and "reactive."[30]

Dr. Hipolito diagnosed the plaintiff with "unspecified mood (affective) disorder" and "[p]ost-traumatic stress disorder, chronic."[31] He prescribed her Geodon, prazosin, and trazodone.[32] He also gave her a GAF score of 45.[33]

---

[23] AR 387–88, 393, 467, 471.

[24] AR 393.

[25] AR 392.

[26] AR 470.

[27] *Id.*

[28] AR 387, 470.

[29] AR 467.

[30] *Id.*

[31] *Id*.

[32] AR 468.

[33] AR 467. A GAF score purports to rate a subject's mental state and symptoms; the higher the rating, the better the subject's coping and functioning skills. *Garrison v. Colvin*, 759 F.3d 995, 1002 n.4 (9th Cir. 2014). A person with a GAF score of 41 and 51 "describes 'serious symptoms' or 'any serious impairment in social, occupational, or school functioning.'" *id*.

United States District Court
Northern District of California

### 2.1.2    Paul Martin, Ph.D. — Examining Psychologist

On July 13, 2015, Dr. Martin performed a psychological evaluation of the plaintiff.[34] He considered her a "fair historian."[35] He noted the plaintiff's adequate grooming.[36] She "made good eye contact," had "normal" facial expressions, and was "100% intelligible."[37] The plaintiff reported taking Geodon, prazosin, and trazodone. She used methamphetamine "for about two or three days" and denied using other drugs. The plaintiff had a history of psychiatric hospitalizations and suicidal ideations, but no suicide attempts.[38] She denied suicidal ideations and hallucinations.[39] Dr. Martin noted that she had the following daily activities:

> The claimant is unable to prepare simple meals[,] . . . do light household chores[,] . . . make change at the store[,]. . . take public transportation . . . [or] drive a car. She does not have a valid driver's license. The claimant reportedly spends the day mostly at home resting and taking care of basic needs. She lives in a sober living house.[40]

The plaintiff complained of bipolar disorder and PTSD. She had "mood swings characterized by crying spells and rage." She was "easily emotional and overwhelmed . . . [and] frequently [became] hyperactive." Her "expanded moods last[ed] only approximately one hour . . . [and] she often fe[lt] depressed . . . for an entire day."[41] Dr. Martin also noted that the plaintiff had a "history of trauma throughout her life."[42] "[S]he reported having flashbacks, reoccurring dreams, hypervigilance, hyper startle response, and [that] she [was] easily triggered."[43] She experienced

---

[34] AR 365.

[35] *Id.*

[36] AR 367.

[37] *Id.*

[38] AR 366.

[39] AR 367.

[40] *Id.*

[41] AR 365

[42] AR 365–66.

[43] AR 366.

"mood swings triggered by memories," and anxiety.[44] When asked about her mood, the plaintiff replied, "I feel numb."[45]

Dr. Martin found that the plaintiff's attention and memory were "adequate," her insight and judgment were "fair," her thought content was "normal," and her thought process was "[o]rganized, coherent, linear and goal directed."[46]

The plaintiff's psychological-functioning tests showed the following: (1) she had difficulty with attention, concentration, and language-based skills; (2) she had "mild difficulty with new learning and memory;" and (3) she had "significant difficulty with sustained attention and[] mental tracking."[47] Dr. Martin concluded that she was not significantly limited in "performing detailed and complex tasks versus simple and repetitive tasks." The plaintiff had the following mild limitations: (1) ability to maintain regular attendance in the workplace; (2) ability to perform work activities without special or additional supervision; and (3) ability to accept instructions from supervisors. Her ability to perform work on a consistent basis and ability to interact with coworkers and the public were moderately limited. She had the following marked limitations: (1) her ability to complete a normal workday or workweek without interruptions resulting from the claimant's psychiatric condition; and (2) her ability to deal with the usual stresses encountered in a competitive work environment.[48]

Dr. Martin diagnosed the plaintiff with PTSD, chronic and mood disorder (not otherwise specified), and gave her a GAF score of 55.[49]

---

[44] *Id.*

[45] AR 367.

[46] *Id.*

[47] AR 368–69.

[48] AR 370.

[49] AR 369. A person with a GAF score of 51 to 60 may connote "moderate symptoms" (e.g. a flat and circumstantial speech and occasional panic attacks) or moderate difficulty in social, occupational, or school and chores-related functioning (e.g. few friends and conflicts with peers or co-workers). *Garrison*, 759 F.3d at 1002 n.4.

United States District Court
Northern District of California

## 2.2   Non-Medical Records

The plaintiff submitted two function reports—one on May 28, 2015, and another on October 21, 2015.[50]

### 2.2.1   May 28, 2015 Function Report

In her May 28, 2015 function report, the plaintiff explained that her symptoms affected her memory and concentration and her ability to follow instructions, get along with others, complete tasks, and deal with authority.[51] She described problems with sleeping and nightmares that affected her thinking.[52] She said that she felt "really depressed" and that her "mind [wa]s speeding and [she] just c[ouldn]'t stay still[.]"[53] She described feeling paranoid and reported that she had trouble getting along with family and friends because her "character change[d] quick[ly] [from] [her] bypolar [sic] and that even freak[ed] [her] out sometimes."[54] She "fe[lt] like people stare[d] at [her] or talk[ed] about [her]," and she once "heard things that were not seeming real."[55] She found changes in routine stressful.[56]

For daily activities, the plaintiff could drive, run errands (such as grocery shopping or going to the post office), and do light housekeeping without assistance.[57] She tried to make three or four meals per day, and each meal took her around an hour-and-a-half to prepare.[58] Sometimes she would "get stuck in front of the food and have to reme[m]ber [she] was going to eat."[59] She had no problems with personal care.[60] She attended daily Alcoholics Anonymous meetings and saw her

---

[50] AR 237–44, 255–63.

[51] AR 242–43.

[52] AR 237.

[53] AR 238.

[54] AR 238, 242.

[55] AR 244.

[56] AR 243.

[57] AR 236.

[58] AR 239.

[59] Id.

[60] Id.

United States District Court
Northern District of California

mom and son every day.[61] She shopped for groceries twice a month, could pay bills, and count change. She did not need reminders to take her medicine.[62] She could not use a checkbook or handle a savings account.[63]

### 2.2.2    October 21, 2015 Function Report

On October 21, 2015, the plaintiff submitted another function report.[64]

Her symptoms remained similar to those she previously reported. Her medications made her "shaky" and feel "slow."[65] Her anxiety "ma[de] it hard . . . to go out and talk to people" and she had "trouble concentrating and completing tasks."[66] Her anxiety made her mind race, and she still reported paranoia, insomnia, and nightmares.[67] She had trouble following written instructions: "I need to re-read thing[s] maybe a dozen times before I understand."[68] For spoken instructions, she often needed people to repeat themselves.[69] The plaintiff was taking trazodone, Geodone, and what she described as "nightmare medicine."[70]

The plaintiff described some new symptoms. She reported waking up "angry and irritable."[71] She struggled to wake up on time and had a "very low" appetite, and when she showered, she would turn the water on and off because she felt like someone was talking to her.[72] She was fearful of "crowds, new people, and new places."[73] She avoided people to deal with her stress.[74]

---

[61] AR 240.

[62] AR 239.

[63] AR 240.

[64] AR 255–63.

[65] AR 255.

[66] *Id.*

[67] AR 256.

[68] AR 260.

[69] *Id.*

[70] AR 262.

[71] AR 256.

[72] AR 255–56.

[73] AR 261.

[74] *Id.*

United States District Court
Northern District of California

Her reported daily activities were similar to those in her May function report. Chores still took her a "really long" time.[75] She was able to leave the house, cook a few meals per day, drive herself, visit her family, manage her own money, and had no issues with personal care.[76]

Unlike her May report, she now needed reminders to take her medicine, and to start and complete chores.[77] She also needed reminders on her phone to go places.[78] Her mom took her grocery shopping, whereas in May she reported doing so alone.[79] This "[took] up to two hours" because she got "distracted by people and tr[ied] to avoid them[;] [her] mom ha[d] to remind [her] what [she was] buying."[80] When she went out, she sometimes needed a roommate to accompany her because of her anxiety.[81] The plaintiff could now use a checkbook and handle a savings account.[82] Her new hobbies included reading and watching TV.[83] Finally, she fed her goldfish "once or twice a week."[84]

### 3.   Administrative Proceedings

#### 3.1    Disability Determination Explanation ("DDE")

During the administrative process, non-examining consultants generated disability-determination explanations ("DDE"), first at the initial level, and then at the reconsideration level.[85]

---

[75] AR 256–57.

[76] AR 256–59.

[77] AR 257.

[78] AR 259.

[79] AR 258.

[80] *Id.*

[81] *Id.*

[82] *Id.*

[83] AR 259.

[84] AR 256.

[85] AR 48–57 (initial), 59–73 (reconsideration).

United States District Court
Northern District of California

At the initial level, Tawnya Brode, PsyD., found that the plaintiff had substance-addiction disorder, a severe impairment.[86] Dr. Brode did not assess the plaintiff's residual-functional capacity ("RFC") but found that the plaintiff was not disabled.[87]

On reconsideration, Mercedes DeCubas, Ph.D., found that the plaintiff had the following severe impairments: substance addiction disorder, anxiety disorder, and affective disorder.[88]

Dr. DeCubas assessed the plaintiff's mental RFC.[89] The plaintiff was moderately limited in the following areas: (1) ability to understand and remember detailed instructions; (2) ability to carry out detailed instructions; (3) ability to maintain attention and concentration for extended periods; (4) ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) ability to interact appropriately with the general public; (6) ability to accept instructions and respond appropriately to criticism from supervisors; and (7) ability to respond appropriately to changes in the work setting.[90]

The plaintiff could understand, remember, and carry out simple instructions, follow a schedule, and sustain goal-directed activity.[91] "Timed work or work requiring quotas would not be suitable" for the plaintiff, and that her "[a]ttention [and] concentration could vary throughout the day."[92] Additionally, she "need[ed] a setting with minimal interpersonal demands" and "may be hypersensitive to negative feedback."[93] The plaintiff may "prefer a setting with minimal changes

---

[86] AR 55.

[87] AR 56–57.

[88] AR 67.

[89] AR 69–71.

[90] AR 70–71.

[91] AR 69–70.

[92] AR 70.

[93] AR 71.

[or] demands in order to avoid frustration."[94] The agency again found the plaintiff to be not disabled.[95]

### 3.2   Administrative Hearing

The ALJ initially held a hearing on October 4, 2017.[96] The plaintiff's attorney, Raymond Austin, and VE Ron Fleck were present, but not the plaintiff.[97]

VE Ron Fleck testified at the hearing.[98] The plaintiff had no past relevant work.[99] The ALJ posed the first hypothetical: "[an] individual of the [c]laimant's age and education . . . limited to performing simple, routine tasks, limited to occasional interaction with coworkers and the public and limited to simple, work-related decisions."[100] Mr. Fleck testified that such a person could be an almond blancher.[101]

The ALJ posed a second hypothetical, which was the same as the first except that the person was limited to "simple or detailed but non-complex tasks."[102] Mr. Fleck testified that the following jobs would be available: (1) clothing layer; (2) flower-picker; and (3) almond blancher.[103]

The ALJ posed a third hypothetical: "a person . . . limited to simple, routine and repetitive tasks and limited to occasional interaction with the public."[104] Mr. Fleck testified, in addition to the previously mentioned jobs, the following jobs would be available: (1) vegetable-harvest worker; (2) bakery wrapper; and (3) cleaner.[105]

---

[94] *Id*.

[95] AR 72.

[96] AR 19.

[97] *Id*. The ALJ held another hearing on March 17, 2018, to allow the plaintiff to appear. The plaintiff again failed to appear. The record does not contain a transcript for the March hearing. *Id*.

[98] AR 39–47.

[99] AR 40.

[100] *Id*.

[101] AR 41.

[102] AR 42.

[103] AR 42–43.

[104] AR 43.

[105] AR 43–44.

The ALJ posed a fourth hypothetical where a person had the same limitations listed in the third hypothetical, but was also off-task fifteen percent of the time.[106] Mr. Fleck testified that no job would be available to such a person.[107]

### 3.3    Administrative Findings

The ALJ followed the five-step sequential evaluation process to determine whether the plaintiff was disabled and concluded she was not.[108]

At step one, the ALJ found that that the plaintiff had not engaged in substantial gainful activity since her application date of February 20, 2015.[109]

At step two, the ALJ found that the plaintiff had the following severe impairments: mood disorder, PTSD, and substance use disorder.[110]

At step three, the ALJ found that the plaintiff had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment.[111]

Before reaching step four, the ALJ determined that the plaintiff had the RFC to "perform a full range of work at all exertional levels but . . . is limited to performing simple, routine, and repetitive tasks . . . [and] occasional interaction with the public."[112]

At step four, the ALJ concluded that the plaintiff had no past relevant work.[113]

At step five, the ALJ held that the following jobs were available to the plaintiff given her RFC: (1) vegetable-harvest worker; (2) cleaner; and (3) racker.[114]

The ALJ found the plaintiff to be "not disabled."[115]

---

[106] AR 44–45.

[107] AR 45.

[108] AR 30.

[109] AR 21.

[110] *Id.*

[111] AR 22.

[112] AR 24.

[113] AR 29.

[114] AR 29–30.

[115] AR 30.

United States District Court
Northern District of California

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of the Commissioner if the claimant initiates a suit within sixty days of the decision. A court may set aside the Commissioner's denial of benefits only if the ALJ's "findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal citation and quotation marks omitted); 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The reviewing court should uphold "such inferences and conclusions as the [Commissioner] may reasonably draw from the evidence." *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). If the evidence in the administrative record supports the ALJ's decision and a different outcome, the court must defer to the ALJ's decision and may not substitute its own decision. *Tackett v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999). "Finally, [a court] may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

## GOVERNING LAW

A claimant is considered disabled if (1) he suffers from a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months;" and (2) the "impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . ." 42 U.S.C. § 1382c(a)(3)(A) & (B). The five-step analysis for determining whether a claimant is disabled within the meaning of the Social Security Act is as follows. *Tackett*, 180 F.3d at 1098–99 (citing 20 C.F.R. § 404.1520).

**Step One**. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" and is not entitled to benefits. If the claimant is not working

in a substantially gainful activity, then the claimant's case cannot be resolved at step one, and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(a)(4)(i).

**Step Two**. Is the claimant's impairment (or combination of impairments) severe? If not, the claimant is not disabled. If so, the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

**Step Three**. Does the impairment "meet or equal" one of a list of specified impairments described in the regulations? If so, the claimant is disabled and is entitled to benefits. If the claimant's impairment does not meet or equal one of the impairments listed in the regulations, then the case cannot be resolved at step three, and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(a)(4)(iii).

**Step Four**. Considering the claimant's RFC, is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled and is not entitled to benefits. If the claimant cannot do any work he or she did in the past, then the case cannot be resolved at step four, and the case proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(a)(4)(iv).

**Step Five**. Considering the claimant's RFC, age, education, and work experience, is the claimant able to "make an adjustment to other work?" If not, then the claimant is disabled and entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. There are two ways for the Commissioner to show other jobs in significant numbers in the national economy: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R., part 404, subpart P, app. 2.

For steps one through four, the burden of proof is on the claimant. At step five, the burden shifts to the Commissioner. *Gonzales v. Sec'y of Health & Human Servs.*, 784 F.2d 1417, 1419 (9th Cir. 1986).

## ANALYSIS

The plaintiff contends that the ALJ erred by (1) underweighing the opinion of examining psychologist Paul Martin, Ph.D., (2) overweighing non-examining state consultants' opinions, and (3) failing to base the plaintiff's RFC on substantial evidence.[116] For the reasons stated below, the court grants the plaintiff's motion for summary judgment, denies the Commissioner's cross-motion, and remands the case for further proceedings.

---

[116] Mot. – ECF No. 19. at 7–15.

### 1. Whether the ALJ Erred in Weighing the Medical-Opinion Evidence

The plaintiff contends that the ALJ failed to provide specific and legitimate reasons for according partial weight to examining psychologist Dr. Martin, and great weight to the opinions of non-examining psychologists Drs. Brode and DeCubas.[117] The court remands on this ground.

The ALJ is responsible for "'resolving conflicts in medical testimony, and for resolving ambiguities.'" *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (quoting *Andrews*, 53 F.3d at 1039). In weighing and evaluating the evidence, the ALJ must consider the entire case record, including each medical opinion in the record, together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b); *see Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (internal quotation marks and citation omitted).

"In conjunction with the relevant regulations, [the Ninth Circuit has] developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527).[118] Social Security regulations distinguish between three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing [non-examining] physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing *Lester*, 81 F.3d at 830); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

An ALJ may disregard the opinion of a treating physician, whether or not controverted. *Andrews*, 53 F.3d at 1041. "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial

---

[117] *Id*. at 8–13.

[118] The Social Security Administration promulgated new regulations effective March 27, 2017. The previous version, effective to March 26, 2017, applies here. *See* 20 C.F.R. § 404.614(a) ("[A]n application for benefits, or a written statement, request, or notice is filed on the day it is received by an SSA employee at one of our offices or by an SSA employee who is authorized to receive it at a place other than one of our offices.").

United States District Court
Northern District of California

1    evidence." *Ryan*, 528 F.3d at 1198 (alteration in original) (cleaned up). By contrast, if the ALJ

2    finds that the opinion of a treating physician is contradicted, a reviewing court will require only

3    that the ALJ provide "specific and legitimate reasons supported by substantial evidence in the

4    record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (cleaned up); *see Garrison*, 759

5    F.3d at 1012 ("If a treating or examining doctor's opinion is contradicted by another doctor's

6    opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported

7    by substantial evidence.") (cleaned up). "The opinions of non-treating or non-examining

8    physicians may [] serve as substantial evidence when the opinions are consistent with independent

9    clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir.

10   2002).

11       An ALJ errs when he "rejects a medical opinion or assigns it little weight" without explanation

12   or without explaining why "another medical opinion is more persuasive, or criticiz[es] it with

13   boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d

14   at 1012–13. "[F]actors relevant to evaluating any medical opinion, not limited to the opinion of the

15   treating physician, include the amount of relevant evidence that supports the opinion and the

16   quality of the explanation provided[,] the consistency of the medical opinion with the record as a

17   whole [and] the specialty of the physician providing the opinion . . . " *Orn*, 495 F.3d at 631 (citing

18   20 C.F.R. § 404.1527(d)(3)–(6)); *see also Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir.

19   1989) (an ALJ need not agree with everything contained in the medical opinion and can consider

20   some portions less significant than others).

21       **1.1   Dr. Martin**

22       Because Dr. Martin's opinion was contradicted by the opinions of the state consultants, the

23   ALJ was required to provide specific and legitimate reasons in partially rejecting Dr. Martin's

24   opinion. He did not do so.

25       In rejecting Dr. Martin's findings, the ALJ reasoned that they were "inconsistent with the

26   opinions of the State agency psychological consultants, inconsistent with the claimant's function

27

28

United States District Court
Northern District of California

1  report, and inconsistent with the medical evidence of record as a whole." [119] This conclusory

2  statement, with only a string citation to the record and no interpretation of the medical evidence, is

3  insufficient. *See, e.g., Cox v. Colvin,* No. 15-cv-00190-JSC, 2015 WL 8596436, at *11 (N.D. Cal.

4  Dec. 14, 2015) ("before rejecting a medical opinion an ALJ must do more than merely identify

5  conflicting evidence") (cleaned up); *Cox v. Berryhill*, No. C 16-07183 WHA, 2018 WL 1536668,

6  at *4 (N.D. Cal. Mar. 29, 2018) ("reference to 58 pages of treatment notes, without discussion,

7  does not satisfy the ALJ's burden to set out a detailed and thorough summary of the facts and

8  conflicting clinical evidence, state his interpretation hereof, and make findings") (cleaned up).

9       Similarly, the ALJ did not explain why the plaintiff's function reports were inconsistent with

10  Dr. Martin's opinion. For example, the plaintiff described struggling to wake up on time, having

11  difficulty with concentrating and completing tasks, experiencing anxiety around others, and

12  needing reminders to take her medicine. [120] The ALJ did not explain why this is inconsistent with

13  Dr. Martin's finding of marked limitation in the plaintiff's ability to complete a normal workday

14  without interruption or deal with the usual stresses in a competitive work environment. [121] *Cf.*

15  *Eiswald v. Berryhill*, No. 18-cv-03714-LB, 2019 WL 3068339, at *22 (N.D. Cal. July 12, 2019)

16  (the ALJ erred when he failed to "provide more specific details as to why working part-time as a

17  housekeeper . . . is inconsistent with [the doctor's] report indicating the plaintiff has a market

18  limitation in concentration and stability").

19       Moreover, the ALJ erred when he found that the opinion was "undermined because the

20  claimant was not forthcoming about her substance abuse, which resulted in Dr. Martin's not being

21  able to ask the claimant whether her anger and lashing out were related to her methamphetamine

22  use." [122] This mischaracterizes the evidence. Dr. Martin knew about the plaintiff's past drug use.

23  He reported that the plaintiff used methamphetamine for "about two or three days" and was in a

---

[119] AR 28.

[120] AR 255–59.

[121] AR 370.

[122] AR 28.

United States District Court
Northern District of California

sober living environment.[123] It is thus unclear how the plaintiff was not "forthcoming." *See Dixon v. Saul*, 411 F. Supp. 3d 837, 850–51 (N.D. Cal. 2019) (the ALJ erred in rejecting examining physician's opinion as uninformed regarding the plaintiff's drug use, where the physician "express[ly]" acknowledged the "past [drug] use and the lack of present use").

In sum, the ALJ did not provide specific and legitimate reasons to discount Dr. Martin's opinion.

### 1.2   Drs. Brode & DeCubas

The ALJ also did not provide specific and legitimate reasons for giving great weight to non-examining psychologists Drs. Brode and DeCubas.

The ALJ gave these opinions great weight because:

> [T]hey are well supported, consistent with the limitations noted in the record, and consistent with the medical records, which showed symptoms of bipolar disorder, posttraumatic stress disorder, mood swings, anxiety, agitation, family conflict, and racing thoughts, but a normal mood, logical thoughts processes, a normal affect, adequate language skills, good eye contact, cooperativeness, normal thought content, orientation times four, alertness, and no delusions, hallucinations, suicidal ideations, or homicidal ideations. Great weight is also given to the opinions of the State agency psychological medical consultants as they are familiar with, and have knowledge of, the criteria used to determine disability under the Social Security Act, and they are familiar with the claimant's record.[124]

First, to the extent the ALJ found the opinions consistent with the record, he did not discuss other parts of the record that were apparently contradictory. For example, on August 3, 2016, Dr. Hipolito noted that the plaintiff reported that, at night, she "hears someone trying to call [her] attention, but not voices."[125] The ALJ does not reconcile this with his finding that the record shows "no delusions [or] hallucinations."[126] Second, the ALJ's finding that the consultants' opinions warranted great weight because they were familiar with the record and the SSA criteria is similarly conclusory and insufficient. *Cf. Keelen v. Comm'n of Soc. Sec.*, No. 19-cv-00461-LB,

---

[123] AR 366.

[124] AR 27–28 (internal citations omitted).

[125] AR 466.

[126] AR 28.

2020 WL 1306982, at *14 (N.D. Cal. Mar. 19, 2020) (the ALJ erred in according great weight to a medical expert solely because the expert "had the opportunity to review all of the medical evidence of record and his opinion is consistent with the record as a whole").

In sum, the ALJ erred by failing to provide specific and legitimate reasons in according great weight to the non-examining psychologists.

### 2. Whether the ALJ Erred by Assessing the Plaintiff's RFC

The plaintiff argues that the ALJ erred in his RFC determination because (1) he failed to incorporate limitations reported by Dr. DeCubas, and (2) he improperly discredited the plaintiff's reported activities of daily living.[127] The court remands on this ground too.

"[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Social Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity"). The ALJ's determination of a claimant's RFC must be based on the medical opinions and the totality of the record. 20 C.F.R. §§ 404.1527(d), 404.1546(c). Moreover, the ALJ is responsible for "'determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Garrison*, 759 F.3d at 1010 (quoting *Andrews*, 53 F.3d at 1039). In weighing and evaluating the evidence, the ALJ must consider the entire case record, including each medical opinion in the record, together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b); *see also Orn*, 495 F.3d at 630 ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (internal quotation marks and citation omitted). The "ALJ must include all restrictions in the residual functional capacity [RFC] determination." *Lubin v. Comm'r of Soc. Sec. Admin.*, 507 Fed. Appx. 709, 712 (9th Cir. 2013).

First, because the RFC relies on the medical evidence and the ALJ erred in weighing the medical evidence (including the opinion of Dr. DeCubas), the court remands for reconsideration of

---

[127] Mot. – ECF No. 19 at 13–15.

United States District Court
Northern District of California

1    the RFC too.

2        Second, the ALJ erred in discrediting the plaintiff based on her reported daily activities.[128]

3        In assessing a claimant's credibility, an ALJ must make two determinations. *Molina*, 674 F.3d

4    at 1112 (9th Cir. 2012). "First, the ALJ must determine whether [the claimant has presented]

5    'objective medical evidence of an underlying impairment which could reasonably be expected to

6    produce the pain or other symptoms alleged.'" *Id.* (quoting *Vasquez*, 572 F.3d at 591). Second, if

7    the claimant produces that evidence, and "there is no evidence of malingering," the ALJ must

8    provide "specific, clear and convincing reasons for" rejecting the claimant's testimony regarding

9    the severity of the claimant's symptoms. *Id.* (internal quotation marks and citations omitted).

10       "At the same time, the ALJ is not 'required to believe every allegation of disabling pain, or

11   else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. §

12   423(d)(5)(A).'" *Id.* (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). "Factors that an

13   ALJ may consider in weighing a claimant's credibility include reputation for truthfulness,

14   inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained,

15   or inadequately explained, failure to seek treatment or follow a prescribed course of treatment."

16   *Orn*, 495 F.3d at 636 (internal quotation marks omitted). "The ALJ must identify what testimony

17   is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775

18   F.3d 1133, 1138 (9th Cir. 2014) (internal citation omitted); *see, e.g.*, *Morris v. Colvin*, No. 16-CV-

19   0674-JSC, 2016 WL 7369300, at *12 (N.D. Cal. Dec. 20, 2016).

20       Because, the ALJ found that the plaintiff's medically determinable impairments could

21   reasonably be expected to cause the alleged symptoms, and there is no evidence of malingering,

22   the ALJ must provide specific, clear and convincing reasons for rejecting the plaintiff's

23   statements.[129] He did not do so.

24

25

26   ─────────────────────
     [128] AR 24–25. The Commissioner argues that the plaintiff failed to raise this argument. She did. The
27   plaintiff's motion challenges the ALJ's characterization and reliance on the plaintiff's self-reported
     activities of daily living. Mot. – ECF No. 19 at 14–15.

28   [129] AR 24.

1    "The Social Security Act does not require that claimants be utterly incapacitated to be eligible

2    for benefits, and many home activities may not be easily transferable to a work environment where

3    it might be impossible to rest periodically or take medication." *Fair*, 885 F.2d at 603 (citation

4    omitted). The Ninth Circuit has held that "disability claimants should not be penalized for

5    attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722.

6        The ALJ rejected the plaintiff's reported symptoms of her disability because her functions

7    report noted that:

8        [S]he takes care of her goldfish, prepares her own meals, drives a car, cleans the
         bathroom, goes grocery shopping, pays bills, counts change, handles a savings account,
9        uses a checkbook, reads, watches television, spends time with others, visits with her
         family on a regular basis, does not need any special reminders to take care of her personal
10       needs and grooming, has never been fired or laid off from a job due to problems with
11       others, goes on Facebook, uses a smartphone, bathes herself, and dresses herself.[130]

12   The ALJ does not explain, however, how these activities translate to a work setting or why they

13   are incompatible with the plaintiff's reported limitations. *See, e.g., Brown v. Berryhill*, No. 16-cv-

14   04022-EMC, 2017 WL 4417516, at *10–12 (N.D. Cal. Oct. 4, 2017) (the ALJ erred when he "did

15   not explain why the[] relatively modest, simple tasks like microwaving meals, preparing salads

16   and soups, carrying light groceries . . . , and walking up to two blocks, provide an indication of

17   [the plaintiff's] increased capabilities beyond those which [she] claimed") (cleaned up); *Cooper v.

18   Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) ("[d]isability does not mean that a claimant must

19   vegetate in a dark room excluded from all forms of human and social activity") (cleaned up).

20       In sum, the court remands for reconsideration of the RFC.

21

22   **3.  Whether to Remand for Further Proceedings or Determination of Benefits**

23       The court has "discretion to remand a case either for additional evidence and findings or for an

24   award of benefits." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen*,

25   80 F.3d at 1292); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) ("The decision whether

26

27

28   ───────────────
     [130] AR 25.

United States District Court
Northern District of California

to remand for further proceedings or simply to award benefits is within the discretion of [the] court.") (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)).

Generally, "'[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded.'" *Garrison*, 759 F.3d at 1019 (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)) (alteration in original); *Treichler*, 775 F.3d at 1099, 1106 ("a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony;" if "the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (citations omitted); *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *McCartey*, 298 F.3d at 1076 (remand for award of benefits is discretionary); *McAllister*, 888 F.2d at 603 (remand for award of benefits is discretionary); *Connett*, 340 F.3d at 876 (finding that a reviewing court has "some flexibility" in deciding whether to remand).

Here, the court finds that remand is appropriate to "remedy defects in the original administrative proceeding." *Garrison*, 759 F.3d at 1019.

## CONCLUSION

The court grants the plaintiff's motion, denies the Commissioner's cross-motion, and remands for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: September 8, 2020

_____

LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California